ALFRED BENNETT and GEORGE D. REESE *vs.* ELIZA T. RHODES, *et al.* ELIZA T. RHODES, *et al. vs.* ANNA HOFFMAN and ALFRED BENNETT, as Executors, and in their own right, and GEORGE D. REESE.

*Responsibility of Executors or Trustees directed by a Testator to continue his business after his death—Construction of a Will—Jurisdiction in Equity as to the Construction of a Will—Receiver—Interest—Surcharging and falsifying Account—Pleadings in Equity.*

If a testator directs his *executors* to carry on his business for a definite time after his death for the benefit of his estate, or appoints *trustees* for such a purpose, they will not be responsible *to the estate* for any loss resulting in the course of an honest administration of the trust.

A codicil to the will of H. contained the following provisions: "My will and desire is, that in the event of my death, and my wife should be living at that time, that the business which I have been, and still am engaged in, (and have been conducting for near fifty years,) shall be continued by my nephew, A. B., for three years, unless my wife, or my nephew, A. B., should depart this life before such said time shall have expired; either event taking place, the said business to be wound up, and my estate settled according to my will. Further, it is my will and desire, that Mr. G. D. R. be associated with my nephew, A. B. in conducting said business, he to receive one-half of the net proceeds, and my nephew, A. B. the other half. I also will and desire, that what money I may have invested in the business, at the time of my death, shall remain in their business, for their use, without interest, for three years, unless said business should be sooner determined, either by the death of my wife or nephew A. B.; either event happening, the business to be wound up, and my capital returned to my estate, and settled according to my will. It is also my desire, that the said B. and R., shall occupy my warehouse, during the period hereinbefore referred to, at an annual rent of five hundred dollars,

Bennett and Reese *vs.* Rhodes, *et al.*   Rhodes, *et al. vs.* Hoffman, *et al.*

to be paid in quarter-yearly instalments of one hundred and twenty-five dollars." In obedience to this direction, B. and R. continued the business for three years, receiving from the executors the net capital invested by H. in his business. During these three years, this amount of capital was lost. On a bill filed by certain specific and residuary legatees under the will, to make B. and R. liable for the capital so received and used by them, and to have the amount of their liability deducted from their legacies under the will, it was HELD:

1st. That the purpose of the testator obviously was, not to have his business continued for the benefit of his estate, but to bestow a benefaction upon B. and R. as legatees. In addition to what he had given them by his will, he designed by this codicil to give them for their own individual benefit and advantage the use, without interest, of all this capital in carrying on the business for a specified period, accompanied however with the obligation to return the same to his estate at the end of that time.

2nd. That it was a gift or benefit which B. and R. were at liberty to accept or reject, but the acceptance of which bound them to the accompanying obligation to return and make good the capital they so used, and which became, after the expiration of the three years, *a debt* due by them to the estate.

B. was one of the executors of H. The widow of H. was the other executor, and united with B. in placing an erroneous construction upon the will of their testator, by which the existence of any indebtedness by B. and R. to the estate was denied and repudiated. Both executors refused to take any steps to collect said indebtedness, and both parties by whom the debt was due were without means to pay the same unless it should be charged upon their interests as legatees in the estate. The bill was filed against B. and the widow of H. as executors, and individually, and against R. On demurrer to the bill, it was HELD:

1st. That the complainants, who were legatees and deeply interested in the due and proper administration of the estate, had a right to the intervention of a Court of equity, to its aid in construing the will and codicil, in enforcing the collection of the debt, and in protecting their interests.

2nd. That the appointment of a receiver, with power to receive and collect the sum ascertained and ordered to be paid, was but a

proper means, under the circumstances, of enforcing the Court's decree.

The interest on the debt belonged under the will to the widow of H. as life tenant, and not to the complainants. The decree in the Court below directed the payment of the principal sum, " with any interest that *may be due* thereon." HELD :

1st. That there was no error demanding reversal in that part of the decree. If the parties ordered to pay should produce a release of the interest by Mrs. H., they were not by the terms of the decree required to pay it to the receiver.

2nd. That the complainants could not surcharge and falsify the administration account passed by the executors in the Orphans' Court, the accuracy of the account not having been impeached in the bill.

APPEALS from the Circuit Court of Baltimore City.

The bill in this case was filed by Eliza T. Rhodes, and others, specific and residuary legatees under the will of Charles Hoffman, against Anna Hoffman and Alfred Bennett, as executors of said will, and in their own right, and against George D. Reese. The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON, IRVING, and RITCHIE, J.

*Thomas Hughes,* and *William A. Fisher,* for Rhodes, and others.

*John P. Poe,* and *Arthur W. Machen,* for Bennett and Reese.

MILLER, J., delivered the opinion of the Court.

The main question presented by the record in this case, is the construction of the codicil to the will of Charles Hoffman, who died in August, 1875. By his will, executed in June, 1873, the testator, after giving his wife,

Anna Hoffman, a life-estate in all his property, real and personal, made sundry devises and bequests to take effect upon her death, to various parties, including Alfred Bennett and George D. Reese. He then gave the residue of his estate to Bennett, and five of the other parties to whom he had previously made special devises and bequests, and appointed Bennett and his wife his executors. By the codicil executed in August, 1874, he first ratifies and confirms every clause, bequest and devise contained in his will, and then makes the following addition thereto:

"My will and desire is, that in the event of my death, and my wife should be living at that time, that the business which I have been and still am engaged in, (and have been conducting for near fifty years,) shall be continued by my nephew, Alfred Bennett, for three years, unless my wife, or my nephew, Alfred Bennett, should depart this life before such said time shall have expired; either event taking place, the said business to be wound up, and my estate settled according to my will."

"Further, it is my will and desire that Mr. George D. Reese be associated with my nephew, Alfred Bennett, in conducting said business, he to receive one-half of the net proceeds, and my nephew, Alfred Bennett, the other half."

"I also will and desire that what money I may have invested in the business, at the time of my death, shall remain in their business, for their use, without interest, for three years, unless said business should be sooner determined, either by the death of my wife or nephew, Alfred Bennett; either event happening, the business to be wound up, and my capital returned to my estate, and settled according to my will."

"It is also my desire that the said Bennett and Reese, shall occupy my warehouse, during the period herein before referred to, at an annual rent of $500 to be paid in quarter-yearly instalments of $125."

Bennett and Reese carried on the business for three years, and during that time lost the capital, as they allege, by the vicissitudes of trade, without fault, bad faith or negligence on their part. They now insist that by the true construction of the codicil they are not bound to refund the capital thus left in the business by the testator, because it was not left with, or received by them, as a *loan* for which they were to be absolutely responsible, but was accepted by them solely as a *trust* created by the testator, which 'they executed with entire good faith, skill and diligence, and consequently, as the capital, when the business was wound up, was found to have been honestly and fairly lost, no obligation rested upon them to return it. But we are unable to place upon this instrument a construction which would thus relieve these parties from liability. It is doubtless true, that if a testator directs his *executors* to carry on his business for a definite time after his death, for the benefit of his estate, or appoints *trustees* for such a purpose, they will not be responsible *to the estate* for any loss resulting in the course of an honest administration of the trust, but that is not the case presented by this codicil. Here, the purpose of the testator obviously was, not to have his business continued for the benefit of his estate, but to bestow a benefaction upon these parties as legatees. He had conducted his business for fifty years with success, having accumulated thereby a handsome fortune, and all the capital invested in it was his own. Bennett and Reese had been his chief clerk and book-keeper, and in addition to what he had given them by his will, he designed by this codicil to give them for their own individual benefit and advantage, the use, without interest, of all this capital in carrying on the business for a specified period, accompanied however with the obligation to return the same to his estate at the end of that time. This is our reading and construction of the instrument. His intention manifestly was to confer a *bene-*

*fit,* not to impose the performance of a *duty,* or the execution of a *trust.*  Bennett and Reese were to have the use of the capital without interest, and all the profits of the business.  This was a gift or benefit which they were at liberty to accept or reject, but the acceptance of which bound them to the accompanying obligation to return and make good the capital they so used.  We therefore hold, that the amount of this capital became, after the expiration of the three years, *a debt* due to the estate by these parties.

The next question is, whether this is a case within the jurisdiction of a Court of equity?  The bill (which was demurred to,) was filed by parties who are specific and residuary legatees under the will, and after averring that Bennett and Reese are liable for the capital so received and used by them, charges in substance, 1st, that they and the widow, Mrs. Hoffman, have construed the codicil to mean that the capital was left in their hands for the benefit of the estate, and as they had exercised proper care in its management, they are not liable for its loss; 2nd, that the complainants have requested Mrs. Hoffman, and Bennett, the executors, to collect and secure this claim, but they have declined to take any steps in the premises, and 3rd, that Bennett and Reese are without means to pay the same, and unless the claim be treated as an advance to them of their legacies, and the same be charged with its payment, they will convey away their interests in the estate, leaving the complainants without any relief.  The bill then prays that the estate may be administered and settled under the jurisdiction of a Court of equity; that the will and codicil may be construed by the Court, and upon such construction that an account may be stated by which the executors shall be charged with the capital left in the hands of Bennett and Reese; that the interests of these parties in the estate be charged with the payment of this claim, and that the same be deducted from their

interest in the estate, when the time shall come for distribution thereof; and for general relief. The case as thus stated, has, certainly, many very peculiar features. One of the executors is a party owing a large debt to the estate. The other executor unites with him in placing an erroneous construction upon the will of their testator, by which the existence of any such debt is denied and utterly repudiated, and therefore *both refuse* to take any steps to collect it. Both parties also by whom the debt is due, are without means to pay the same, unless it be charged upon their interests in the estate. Under these peculiar circumstances, we are of opinion, that the complainants, who are legatees, and deeply interested in the due and proper administration of the estate, have a right to the intervention of a Court of equity, to its aid in construing the will and codicil, in enforcing the collection of the debt, and in protecting their interests. If then there be jurisdiction in equity, we see no valid objection to that part of the decree appealed from, which appoints a receiver with power to receive and collect the sum ascertained and ordered to be paid. The appointment of such an officer was but a proper means, under the circumstances, of enforcing the Court's decree. Nor do we perceive any error, demanding reversal in that part of the decree which relates to the payment of interest on the principal sum due. It is true, this interest, whatever it may be, belongs under the will, to Mrs. Hoffman, the life-tenant, and not to these complainants, but as we understand it, the decree simply directs payment of the principal sum, "with any interest that *may be due* thereon," so that if the parties ordered to pay, shall produce a relinquishment or release of the interest by Mrs. Hoffman, they are not, by the terms of the decree, required to pay it to the receiver. After the money is thus collected by the receiver, the decree properly directs him to bring it into Court, so that it may be applied under the order of the Court as directed by the terms of the will.

Bennett and Reese *vs.* Rhodes, *et al.*   Rhodes, *et al. vs.* Hoffman, *et al.*

The appeal of the complainants brings up the question whether the amount of the debt is correctly stated in the decree. The amount of capital taken by Bennett and Reese under the terms of the codicil, as stated in the auditor's account, which the decree adopts and ratifies, is $9620.18. This result, the auditor has reached from an examination of the administration accounts passed in the Orphans' Court, by the executors, as well as from the testimony taken before him; and he is clearly right, unless the claims preferred by Bennett and Reese against the estate, are open to assault, under the present bill. Much of the testimony taken before the auditor was directed to the correctness of these claims, and we agree with him that the issues in this case involve no such question. These claims, proved and passed by the Orphans' Court, are allowed in the first administration account, which was passed in December, 1876, and the accuracy of that account the complainants have not impeached in their bill. This bill, which was not filed until April, 1880, contains no averment under which proof could be admitted tending to surcharge and falsify this account.

*Decree affirmed, and*
*cause remanded.*

(Decided 2nd March, 1882.)