STATE OF MARYLAND, use of THOMAS HUGHES *vs.*
SKIPWITH WILMER, Adm'r of RIGGIN BUCKLER,
WILLIAM G. BANSEMER, and ANNA HOFFMAN.

*Action on Executors' Bond—Assets—Sureties—Receiver.*

A testator by his will directed that his business should be continued
by his nephew, A. B., and by a certain G. D. R., for a period of
three years, unless within that time certain events happened; in
which case the business was to be wound up, and the capital
returned into the estate and settled according to the will. The
executors surrendered the amount of the capital to B. and R., and
took credit therefor in their administration account. The capital
was lost in the course of trade, and at the expiration of the three
years, the executors took no steps to collect the amount thereof
and return it to the estate, but refused so to do, although the same
could have been realized from means owned by B. and R., for some
considerable time after the expiration of the three years. B. was
himself one of the executors. HELD:

1st. That the amount of capital invested in the business at the death
of the testator was designed by him to be simply a beneficial loan
to B. and R. for a given period, and not that it should cease to be
part of his estate.

2nd. That the fund thus loaned remained a part of the assets of the
estate, and was not fully administered by simply turning it over
to B. and R., and taking credit therefor in the administration
account.

3rd. That it was the duty of the executors to see that this fund came
back to the estate to be fully administered in accordance with the
provisions of the will.

4th. That being part of the estate in which a legatee for life, and
legatees in remainder were interested, it became the duty of the
executors to collect and charge themselves with the fund, and,
under the order and direction of the Court, to invest the same in
some safe security, so as to produce interest for the legatee for life,
and to protect the *corpus* of the fund for the benefit of the legatees
in remainder.

5th. That it being the plain duty of the executors to collect and account for the fund, their refusal or failure so to do constituted a breach of the condition of their bond.

6th. That the sureties in the bond must be taken to have contracted their liability with reference to the duties of the executors under the will.

7th. That the appointment of a receiver to collect the assets of the estate, after the executors had refused to do so, in no manner affected the obligation of the sureties on their bond.

8th. That action on the bond was properly brought in the name of the State for the use of the receiver; the receiver simply conducting the proceedings as the hand of the Court, to recover the fund to be administered, in accordance with the will of the testator.

Appeal from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—at the trial the plaintiff offered the two following prayers:

1. If Alfred Bennett was one of the executors of the estate of Charles Hoffman, and as such, together with Ann Hoffman, William G. Bansemer and Riggin Buckler, executed the bond in evidence, and Alfred Bennett and Geo. D. Reese were jointly and severally indebted to the estate of Charles Hoffman, on the 5th day of August, 1878, and have never discharged said indebtedness, except as to credits hereafter mentioned ; and the said Alfred Bennett was then, and for a period of at least six months after, able to pay said debt, and the Circuit Court of Baltimore City undertook the administration of said estate, and appointed Thomas Hughes receiver, to collect said debt, then the verdict must be for the plaintiff in the amount of said debt, less any sums received by the said receiver as a credit thereon.

2. If Alfred Bennett was one of the executors of the estate of Charles Hoffman, and as such, together with Ann

·Hoffman, William G. Bansemer and Riggin Buckler, exe-·cuted the bond in evidence, and Alfred Bennett and George D. Reese were jointly and severally indebted to the estate of Charles Hoffman, on the fifth day of August, 1878, and have never discharged said indebtedness, except the credits hereafter mentioned, and the Circuit Court of Baltimore City undertook the administration of said estate, and appointed Thomas Hughes receiver, to collect said debt, then the verdict must be for the plaintiff in the amount of said debt, less any sums received by the said receiver as a credit thereon.

The defendants offered three prayers, the second of which was refused, and is therefore omitted; the others were as follows:

1. That if the Court shall find from the evidence that the sum of $9,620.18, mentioned in the declaration, and to recover which this action is brought, is the money which Charles Hoffman had invested in his business at the time of his death, and which at that time was represented by his stock of merchandise, worth $6,488.93, and cash amounting to $3,131.25, and that the said merchandise and cash were, after the death of Charles Hoffman, delivered by his executors to Alfred Bennett and George D. Reese, and that the said merchandise and cash together made up the item of $9,620.18, for which the executors of Charles Hoffman received credit in their second administration account as having been paid by them to the said Bennett and Reese on account of the capital of the testator, directed by his will to be left in their hands, then the plaintiff is not entitled to recover in this case.

3. That the evidence in the case does not show any title in the equitable plaintiff to maintain this action against the defendants.

The Court (STEWART, J.,) refused the plaintiff's prayers, and the second prayer of the defendants, and granted their first and third prayers. The plaintiff excepted, and

State, use of Hughes *vs.* Wilmer, Adm'r, *et al.*

the verdict and judgment being in favor of the defendants, appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*Thomas Hughes,* and *Charles Marshall,* for the appellant.

*Samuel D. Schmucker,* and *William F. Frick,* for the appellees.                                     ⚓

The undoubted duty of the executors was to deliver absolutely the invested capital to Bennett and Reese in due course of administration. This they did, and properly got credit therefor in their account passed in the Orphans' Court. This delivery, when so made, discharged the bond of the executors. *Hunter vs. Green,* 22 *Ala.,* 336–8; *Hodge vs. Hodge,* 72 *N. C.,* 619, 620; *Williams vs. Colton,* 3 *Jones Eq.,* 395–7; *Weeks vs. Jewett,* 45 *N. H.,* 543.

When personal property was given to one for life, or for a particular term, with remainder to another, the old practice was to require security of the life-tenant, but that is not now so, unless a case of danger be shown. 1 *Roper on Legacies,* *315; 2 *Williams on Executors* (6 *Am. Ed.*), *1396; *Boyd vs. Boyd,* 6 *G. & J.,* 31–32.

It has several times been decided in Maryland that an executor should not ordinarily deliver to a life-tenant *money or property whose only use is the conversion into money,* but should invest the same. See *Woods vs. Fuller,* 61 *Md.,* 459. But if the will manifests an intention that the particular tenant shall have the use and disposition of the thing bequeathed, then it has been clearly held in Maryland that the executor must deliver it to the particular tenant, and not invest it. *Boyd vs. Boyd,* 6 *G. & J.,* 25, 31–32.

In the present case, as the "invested capital," consisting of a stock of goods and money, was given for the express

purpose of carrying on business, the plain intent of the testator was that the particular tenants, Bennett and Reese, should have the use and disposition thereof, and any attempt. to invest the bequest, and allow Bennett and Reese only the interest thereof, would have defeated the plain intent of the will, and would, in fact, have made the executors and their sureties liable to Bennett and Reese for damages.

The will requires the legatees, Bennett and Reese, "to return," to the estate, after a period of years, the capital bequeathed to them, thus creating an obligation on their part in the nature of a debt. The appellant falls into the error of treating this obligation or charge on the part of the legatees as if it had been a debt *due the deceased* at the time of his death, and seeks to hold the bond of the executor liable because the legatees failed to do their duty. The Maryland cases plainly distinguish the debt due the deceased from the charge or obligation put by the will upon the legatee, and hold that the bond of the executor is not liable for the failure of the legatee to discharge his obligation. *Ellicott vs. Ellicott & Early*, 3 *Gill*, 439; *Hewlett vs. Hewlett*, 48 *Md.*, 138; see also *Sims vs. Lively*, 14 *B. Monroe*, 433, 436.

ALVEY, C. J., delivered the opinion of the Court.

This is an action upon the bond of the executors of Charles Hoffman, deceased, who died on the 5th of August, 1875; and the case was tried in the Court below on an agreed statement of facts, without the aid of a jury, and the judgment being for the defendants, the plaintiff has appealed.

Charles Hoffman, the testator, had been a merchant for many years, and was still in business at the time of his death. By his will, after giving his wife, Anna Hoffman, a life estate in all his property, real and personal, he made various devises and bequests, to take effect upon the death

of his wife, to several parties, including Alfred Bennett and George D. Reese. He then gave the residue of his estate to Bennett and five of the other parties to whom he had previously made special devises and bequests, and appointed his wife and Bennett his executors, who duly qualified and assumed the duties of the trust.

By a codicil to his will, the testator desired that the business in which he was engaged, and had been for nearly fifty years, should be continued by his nephew, Alfred Bennett, *for three years,* unless within that time his wife, or the said Bennett, should die, in either of which events, "the said business to be wound up, *and my estate settled, according to my will.*" The codicil then proceeds to declare, that "it is my will and desire that George D. Reese be associated with my nephew, Alfred Bennett, in conducting said business, he to receive one-half of the net proceeds, and my nephew, Alfred Bennett, the other half. I also will and desire that what money I may have invested in the business at the time of my death, shall remain in their business for their use, without interest, *for three years,* unless said business should be sooner determined either by the death of my wife, or my nephew, Alfred Bennett, either event happening, the business to be wound up, *and my capital returned to my estate, and settled according to my will.*"

Bennett and Reese availed themselves of the aid extended to them by the testator, and received of the executors the amount of capital invested in the business of the testator at the time of his death, being the sum of $9,620.18, and the executors took credit therefor in their administration account. Bennett and Reese continued the business for three years; but during that time they lost, as they alleged, by the vicissitudes of trade, the entire amount of capital thus invested. At the end of the three years, having lost the capital belonging to the estate, both Bennett and Reese assumed the position, in which Mrs. Hoff-

man coincided, that the money or capital was confided to them at the risk of the business, and as they had lost it in the course of the business, they were not accountable therefor. It was because of this claim of exoneration by Bennett and Reese, and the refusal of the executors to collect and account for the fund allowed to remain in the business for the use of Bennett and Reese, that some of the parties in interest who were specific and residuary legatees under the will, filed a bill in equity against Mrs. Hoffman and Bennett, as executors, and against them and Reese, in their individual capacities, for the purpose of securing the fund. The bill charged that Bennett and Reese were liable for the fund allowed to remain in the business for their benefit; but that they and Mrs. Hoffman had construed the codicil to mean that the capital was left in their hands for the benefit of the estate, and as they had exercised proper care in its management, they were not liable for its loss. The bill also alleged that the complainants had requested Mrs. Hoffman and Bennett, the executors, to collect and secure the claim for the benefit of the estate, but they had declined to take any steps to that end, and that Bennett and Reese were without means to pay the same, unless certain interests in the estate held by them were made available for that purpose. Upon these charges the relief prayed was that the estate might be administered and settled under the jurisdiction and direction of the Court; that the will and codicil might be construed by the Court, and, upon such construction, that an account might be stated by which the executers should be charged with the capital left in the hands of Bennett and Reese; and that the interests of Bennett and Reese in the estate should be charged with the payment of the claim.

Upon answer being filed to the bill, the Court, by its decree of the 16th of March, 1881, held and decreed, "that by the proper construction of the will and codicil of Charles

Hoffman, deceased, the capital which the testator had in his business at the time of his death, and which was left in the hands of Alfred Bennett and George D. Reese, under said will and codicil, was not intended to be subject to the risks of their business, but that the same was intended to be and constituted *a loan to them*, for which they are now accountable to said estate, and that the said Bennett and Reese pay to the receiver hereinafter appointed the sum of $9,620.18," that being the amount ascertained to be due. The decree then proceeds to appoint a receiver, with authority to collect and receive the amount of money declared to be due, and in default of payment, that execution should issue therefor. It further declared that until payment, the amount due shall be a charge upon the interests of the parties in the estate ; and then decrees that the estate of the testator be administered under the direction and control of the Court. It did not, however, proceed to decree that the executors should state an account and therein charge themselves with the amount of the fund due from Bennett and Reese, as prayed by the bill ; but decreed that the amount be paid to the receiver, to be by him brought into Court to be applied as the Court should direct. The defendants in the case appealed from that decree to this Court, and here the decree was affirmed ; this Court, in its opinion, declaring that the amount of the capital used by Bennett and Reese became, after the expiration of the three years, *a debt* due to the estate by those parties. 58 *Md.*, 78, 83. After the affirmance of the decree, the receiver having failed to collect the amount due from Bennett and Reese, he applied to the Court and obtained an order directing that suit be brought upon the bond of the executors. And to that action the defence made has raised two questions for determination ;—1st, whether the bond be liable to suit for the non-collection and failure to account for the money due from Bennett and Reese ; and, 2ndly, whether the receiver be entitled to prosecute the suit on the bond.

1. With respect to the first of these questions, we do not perceive why there should be a doubt entertained. The amount of capital invested in the business at the death of the testator, was designed by him to be simply a beneficial loan to Bennett and Reese for a given period, and not that it should cease to be part of his estate. The fund thus loaned remained a part of the assets of the estate, and was not fully administered by simply turning it over to Bennett and Reese, and taking credit therefor in the administration account. The allowance of such credit in the account must be construed with reference to the provision in' the codicil, under which the loan was made ; and that provision plainly shows it to have been the intention of the testator that, upon the expiration of the three years, or sooner, upon the happening of the events therein mentioned, the fund should be *returned to his estate, and settled according to his will.* It was therefore clearly the duty of the executors to see that this fund did come back to the estate, to be fully administered in accordance with the provisions of the will. Being part of the estate in which a legatee for life, and legatees in remainder were interested, it became the duty of the executors to collect and charge themselves with the fund, and, under the order and direction of the Court, to invest the same in some safe security, so as to produce interest for the legatee for life, and to protect the *corpus* of the fund for the benefit of the legatees in remainder. *Evans vs. Iglehart,* 6 *G. & J.,* 171; *State vs. Robinson & Campbell,* 57 *Md.,* 486. If a similar loan had been made to any other party than one of the executors, it would have been the duty of the executors to have sued for it, and recovered it back to the estate. The terms upon which Bennett and Reese accepted the use of the capital invested, created an obligation on their part to return it to the estate, and that obligation was to the executors, as the representatives of the estate. The fund constituting a part of the assets to be

administered, the executors would have had the right, as against third parties, to sue for it in their representative capacity, though it was not a debt due the testator. *Sasscer vs. Walker,* 5 *G. & J.,* 102.   It being therefore the plain duty of the executors to collect and account for the fund, their refusal or failure so to do, constituted a breach of the condition of their bond.   The condition of the bond covers the whole scope of their duties; for it provides that they shall well and truly perform the office of executors, according to law, and shall in all respects discharge the duties of them required by law, without any injury or damage to any person interested in the faithful performance of such office.   According to the agreed statement of facts, the money could have been realized from means owned by Bennett and Reese, and certainly the former, for some considerable time after the expiration of the three years; but no steps were taken for that purpose; and Bennett, being both debtor and executor, wholly refused to recognize his obligation to the estate.

It is said that to hold the bond liable will operate a great hardship and surprise upon Mrs. Hoffman, the co-executor, and legatee of this fund for life, and also upon the sureties in the bond.   But Mrs. Hoffman, as co-executor, had the remedy in her own hands, to require her co-executor to account for the fund in the Orphans' Court (*Beall vs. Hilliary,* 1 *Md.,* 189,); and for her failure to protect herself by taking the necessary steps to that end, she has no one to blame but herself.   And as to the sureties in the bond, they must be taken to have contracted their liability with reference to the duties of the executors under the will and codicil of the testator.   If this were not the construction, the bond would fall very far short of furnishing protection to those interested in the settlement of the estate.

It is contended by the appellees, that, inasmuch as the parties entitled in remainder interposed by bill and had a

receiver appointed to collect the fund from Bennett and Reese, such action of the Court excluded the right of the executors, or either of them, from taking steps for the collection of the fund, and therefore the sureties on the bond are released ; that by such proceedings the principals in the bond were prevented from discharging their duty, and their relation to the subject-matter was so altered as to release their sureties in the bond as to the particular fund involved. But we are utterly unable to perceive how the proceedings in equity did or could operate to prevent the executors from discharging their duty. It was because they had refused to discharge their duty, and protect the assets of the estate, that the Court was invoked to appoint the receiver ; and the appointment of that officer of the Court, as a means of protecting the assets of the estate, in no manner affected the obligation of the sureties on the bond. The breach of the condition of the bond had been committed before the receiver was appointed, and it was because of such breach that the Court deemed it necessary to make the appointment of a receiver to do what the executors had refused to do.

2. Then, as to the second question, which we take to be equally clear and free from difficulty, as the question just considered. We have stated the circumstances under which the application was made for the appointment of a receiver, and the object for which he was appointed. Upon the allegations of the bill, the Court assumed jurisdiction of the complete administration of the estate; and the principal object in invoking the aid of the Court was to secure the fund due from Bennett and Reese, for the benefit and protection of the parties entitled as legatees in remainder. It was distinctly charged that the fund was in danger of being lost, by reason of the refusal of the executors to collect and account for the same in the settlement of the estate ; and upon such allegation there can be no serious question of the power and jurisdiction of the Court

to appoint a receiver (*Anon.* 12 *Ves.*, 4; *Middleton vs. Dodswell*, 13 *Ves.*, 266; *Long vs. Majestre*, 1 *John. Ch.*, 305, 306); and the propriety of the exercise of the jurisdiction was fully recognized by this Court, in affirming the decree whereby the present receiver was appointed. 58 *Md.*, 84. And having appointed a receiver in such case, the Court will, if it be necessary to bring an action at law to recover any part of the effects of the estate, order the receiver to bring the action in the name of the executor, and forbid the latter from interfering with the conduct of the proceedings. *Utterson vs. Mair*, 2 *Ves. Jr.*, 95, 98. But here the action on the bond was not required to be in the name of the executors, nor in that of the receiver; but it is in the name of the State as legal plaintiff, the receiver simply conducting the proceedings as the hand of the Court, to recover the fund to be administered, in accordance with the will of the testator. Under the circumstances of the case, we can perceive no valid objection to the suit on the bond for want of authority in the receiver to conduct the proceedings.

With these views of this case, we are of opinion that there was error committed by the Court below in refusing to grant the plaintiff's first prayer, and in granting the first and third prayers of the defendants. The second prayer of the plaintiff was also rejected, but in regard to the legal proposition therein submitted, we deem it unnecessary to express any opinion, in view of the admitted facts proper to be considered under the plaintiff's first prayer.

It follows that the judgment of the Court below must be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*