GEORGE W. FROCK ET AL.

vs.

COLUMBIAN CONSTRUCTION COMPANY.

EMORY L. COBLENTZ ET AL.

vs.

COLUMBIAN CONSTRUCTION COMPANY.

CHARLES McC. MATHIAS, RECEIVER,

vs.

COLUMBIAN CONSTRUCTION COMPANY.

*Corporate Receiver—Commissions—Claims for Money Borrowed—Priorities.*

Where it was the confident and reasonable expectation of all persons interested in an insolvent construction company, that the completion and sale by a receiver of its houses under construction would result in the payment of all creditors in full, and the appointment of a receiver was accordingly approved at a conference of creditors and stockholders, commissions to the receiver should not, because he had a personal interest in the corporation, be disallowed, on the objection of receivership creditors who, as holders of a pre-existing claim, participated in the conference which approved the appointment of the receiver. p. 418

Where the fund for distribution by the receiver, after the payment of other expenses, was only $4,487.29, *held* that it was improper to appropriate $4,374.74 of that amount for commissions, in view of the special reason for the receivership proceeding, that is, the completion and sale of certain houses under construction, of the personal interest of the receiver, and of

the unfortunate consequences of the failure to accomplish the
purpose of the proceeding.                                    p. 419

The ruling as to the amount of compensation to be allowed
a receiver depends in every case upon its special circumstances.
p. 419

Where money for the completion of buildings, afterwards
sold by the receiver, was raised by him by means of loans
obtained on notes bearing the personal endorsements of himself
and another stockholder, the holders of such notes were entitled
to share in the proceeds of the sale of the buildings equally
with creditors claiming for work and materials furnished in
connection with their completion.                            p. 420

It was immaterial, for the purpose of a claim by the stock-
holder who endorsed notes of the receiver, that he paid the
notes, he not being a mere volunteer in doing so, and it appear-
ing that, without his endorsement, the funds could not have
been raised for the completion of the buildings, and that he
paid the note because of the liability which he had thus incurred
for the benefit of receivership operations, in which all the
parties to the litigation had a mutual concern.              p. 420

An appeal from an order ratifying an audit brings up for
review an order previously passed determining the rights of
the parties and determining how the audit should be prepared.
p. 421

A receiver executing a note in temporary settlement of a
claim for work and material furnished during the receivership
period, without authority from the court, has no power, by
inserting therein an agreement to pay attorney's commissions,
to bind the assets of the receivership, or to affect the rights of
other creditors.                                             p. 421

In the distribution of the assets in the hands of a corporate
receiver, *held* that interest should be included in each of the
claims entitled to share in the distribution.                p. 421

*Decided January 12th, 1923.*

Appeals from the Circuit Court No. 2 of Baltimore City
(CARROLL T. BOND, J.).

Bill by William H. Medford against the Columbian Construction Company, under which Charles McC. Mathias was appointed receiver for said company. From certain orders involving the distribution of the fund in the hands of the receiver, separate appeals were taken by (1) George W. Frock and John S. Frock, trading as Frock Brothers; (2) Emory L. Coblentz, Charles McC. Mathias and Central Trust Company, and (3) Charles McC. Mathias, receiver. Affirmed in part and reversed in part.

The causes were argued before BOYD, C. J., BRISCOE, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*James Morfit Mullen,* for George W. Frock and John S. Frock, trading as Frock Brothers.

*William H. Hudgins* and *Leo Weinberg,* for Emory L. Coblentz, Charles McC. Mathias, in his own right and as receiver, and Central Trust Company.

URNER, J., delivered the opinion of the Court.

The Columbian Construction Company was incorporated for the purpose of engaging in the erection and sale of dwelling houses in the City of Baltimore. As its first and only business operations, it purchased certain land for improvement and was proceeding to build sixteen dwellings when, early in October, 1920, it became insolvent. The houses were then about half finished. There were unpaid bills amounting to approximately $26,000, and there was a building mortgage of $72,000 on the property. It was agreed by the stockholders and principal unsecured creditors that the proper course to be pursued, for the benefit of their interests, was to have a receiver of the corporation appointed with authority to complete and sell the houses then under construction. The condition of the real estate market at that time was such as to justify the belief that the dwellings, when completed, could be sold for a total amount sufficient to satisfy all of the debts

and provide a substantial sum for the stockholders. A bill for the appointment of a receiver was accordingly filed in the name of William H. Medford, who owned $5,000 of the capital stock of the company and was its president. By consent of the corporation an order was passed appointing Charles McC. Mathias receiver, and authorizing him to continue its operations. In pursuance of subsequent orders, on his petitions, he issued receivership notes, for sums aggregating $20,500, to aid in financing the completion of the buildings. In addition to the funds thus provided, the receiver used for the same purpose a balance of $28,569 available under the building mortgage. The receiver personally advanced $400 to pay some pressing debts.

The houses were completed in December, 1920. Arrangements had been made previously to have them offered for sale at prices which the existing condition of the market appeared to warrant, and which would have yielded a fund more than sufficient to pay all the debts of the corporation and of the receivership. The efforts to sell the properties on advantageous terms were not successful. A serious depression in real estate values occurred before the houses could be sold, and instead of realizing from them $125,000, the sum which they had been expected to produce, the receiver was able to sell them for only $90,000. This result was very unfortunate. The liens on the property absorbed all but $5,517.79 of the proceeds of sale, and consequently a small proportion only of the receivership debts can be paid, while the general creditors and stockholders of the corporation will be wholly unsatisfied.

The promissory notes which the receiver was authorized by special orders to execute were as follows: One of $3,500 to the Central Trust Company, of Frederick, for a loan to pay for radiators to be installed in the sixteen houses as parts of the heating plants; two of $5,000 each to the Title Guarantee and Trust Company, of Baltimore, for loans to pay current expenses for labor and material; and three notes for the total amount of $7,000 to the Atlantic Mill and Lumber Company for mill work and lumber. As the payees of the notes were

unwilling to accept them merely on the credit of the receivership, they were all endorsed by Emory L. Coblentz, who was interested as a stockholder and general creditor in the success of the operations in which the receiver was engaged. The notes to the Atlantic Mill and Lumber Company were endorsed also by the receiver in his individual capacity. The amount due on the last mentioned notes was reduced to $6,450 while the work on the buildings was in progress. After their completion the receiver gave a note, without endorsement, to Frock Brothers for $3,426 in temporary settlement of their claim for plumbing work and material, for the sixteen dwellings, furnished during the receivership period. Two notes had also been given by the receiver to himself, individually, for the $400 which he had personally advanced. The total of these receivership liabilities is $23,776. Mr. Coblentz, as endorser, has paid the notes to the Title Guarantee and Trust Company and to the Atlantic Mill and Lumber Company, aggregating $16,450.

The case was referred to the auditor by an order which included a direction for the allowance of commissions to the receiver. In conformity with this order the audit provided for commissions, at the authorized rates, amounting to $4,374.74. This and other expenses reduced the balance for distribution to $112.55, which the audit divided *pro rata* among the receivership creditors, who thus would have been paid less than one-half of one per cent. of their claims.

Exceptions to the audit were filed by Frock Brothers, on the ground that the allowance of commissions to the receiver was inequitable, when the funds were insufficient for the payment of the debts which he had incurred. It was further asserted that the claim of the exceptants should be paid in full because of an alleged understanding with the receiver to that effect before the debt was contracted. The exceptions were sustained, and an audit was directed to be filed allowing no commissions, and distributing the available fund, first to the payment in full of the claim of Frock Brothers, for $3,426,

and then *pro rata* among the other holders of receivership
notes.   To the audit prepared in accordance with those direc-
tions, the Central Trust Company,   Mr. Coblentz, and Mr.
Mathias excepted, as receivership creditors, because of the
priority given Frock Brothers in the distribution, and excep-
tions were filed also by Mr. Mathias as receiver because his
commissions had been disallowed.   From an order overruling
their exceptions, and ratifying the second audit, all of the
exceptants have appealed.   A separate appeal was entered by
Mr. Mathias, as receiver, from the order disallowing com-
missions because of the exceptions to the audit first filed.
Frock Brothers also appealed from that order because, in
directing the new distribution, it authorized the payment of
only the principal of their note, and excluded the interest and
attorney's commissions for which it provided.

The question relating to the receiver's commissions will
be first considered.   It was decided below adversely to such
an allowance, on the ground that the service undertaken and
rendered by the receiver was for the protection of his per-
sonal interests, and that his compensation, therefore, ought
not to be paid, at the cost of those with whom he contracted,
out of a fund which is inadequate to satisfy their just de-
mands.   This view is based upon equities which would have
greater strength if Frock Brothers, who are the only creditors
objecting to the commissions, had not been consulted about
the institution and purpose of the receivership proceeding,
and had not assented to it as a means of safeguarding their
own pre-existing interests.   When the Columbian Construc-
tion Company became insolvent, Frock Brothers had an unse-
cured claim of $3,000 against it for work and supplies.   It
was evident that this claim would be wholly lost if the build-
ing enterprise which had exhausted the resources of the
company were not carried to completion.   A sale of the houses
in an unfinished condition might have involved such a sacri-
fice of their value as to subject even the mortgage creditors to
a substantial loss.   It was the confident expectation of all
concerned that the completion and sale of the houses by a duly

authorized receiver would result in the payment in full of all creditors of the corporation. This was a reasonable anticipation in view of the conditions existing when the application for the receivership was considered and approved at the conference of stockholders and creditors, in which Frock Brothers participated. It was the subsequent and unforeseen decline in real estate values that prevented the success of the policy to which they agreed, and which the receiver executed to the best of his ability. In our opinion he is entitled to compensation out of the fund which his services have helped to produce. But we think the commissions allowed in the first audit should be materially diminished. The fund for distribution, after the payment of other expenses, is only $4,487.29, and we are unable to approve of the appropriation of $4,374.74 of that amount for commissions under such conditions as are here presented. This would be clearly excessive in view of the special reason for the receivership proceeding, of the personal interest of the receiver in having it instituted, and of the unfortunate consequences of the failure to accomplish its purpose. There should be only a very moderate compensation provided out of the fund awaiting distribution, but the question as to the precise amount of the allowance will be referred to the Circuit Court No. 2 of Baltimore City, whose order is now under review. Within the limits of its discretion, under the rule of court on the subject, the commissions originally authorized may be largely reduced. The decisions which have ben cited in the argument upon the question of the receiver's compensation were influenced by facts essentially different from those which the present case involves. The ruling upon such a question depends in every case upon its special circumstances.

In the distribution of the remaining fund we think there should be no discrimination among the receivership creditors. The proceeds of the loan obtained on the notes which Mr. Coblentz and Mr. Mathias endorsed were used for the completion of the buildings from the sale of which the fund in dispute was derived. This was exactly the same use to which

the labor and material furnished by Frock Brothers were applied. In the regular course of construction their work on the buildings was the last to be finished, and for that reason the exhaustion of available funds left them in the position of being the only receivership creditors, other than those advancing money, whose claim was not paid. A further loan was not procured by the receiver, and he declined to individually endorse the note he gave to Frock Brothers, because he felt that he had reached the limit of the personal credit which he ought to extend or solicit. The considerations which induced Mr. Coblentz and Mr. Mathias to favor a receivership were of the same nature as those which prompted Frock Brothers to give it their approval. It was a proceeding to which they all agreed as being for their common benefit. They all lose heavily because of newly developed conditions for which none of them can be said to be responsible. If the other labor and material creditors had not been paid out of the borrowed funds, as their claims accrued, they would be entitled to share rateably with Frock Brothers in the pending distribution. There is certainly no injustice to the latter in the admission of the lending creditors to the same right of participation which the workman and materialmen who were paid with the money loaned could have exercised. The fact that Mr. Coblentz has paid some of the receivership notes does not affect the question we are deciding. He was not a mere volunteer in making the payments. The loans and credit represented by the notes would not have been obtained without his endorsement, as the evidence proves, and he paid the notes because of the liability he had thus incurred for the benefit of receivership operations in which all the parties to these appeals had a mutual concern. Testimony was offered by Frock Brothers to the effect that during the conference preceding the application for the appointment of a receiver they were given definite assurance that their claims would be paid in full, but the weight of the evidence is to the contrary. The exceptions to the second audit because of the priority it

gave to the claims of Frock Brothers ought, in our judgment, to have been sustained.

The suggestion has been made that the question we have just considered was not properly raised by the appeal of the Central Trust Company and Messrs. Coblentz and Mathias, as they appealed from the order ratifying the second audit and not from the earlier order determining the rights of the parties and directing how the audit should be prepared. The order ratifying the second audit was final and appealable under section 27 of article 5 of the Code (*Pfeaff* v. *Jones,* 50 Md. 263), and the appeal from that order enables us to review the order previously passed. Code, art. 5, sec. 28.

In regard to the appeal of Frock Brothers, taken because the ratified audit did not allow interest and attorney's commissions, as provided by the note given them by the receiver, our view is that the commissions claimed were rightly disallowed. The receiver was not authorized by the court to execute the note, and he had no power to bind the assets of the receivership, or affect the rights of other creditors, by the commission agreement which the note contained. It seems equitable that interest should be included in this claim, as it will be in the others, for the purposes of the distribution in which it is to share.

> *Orders affirmed in part and reversed in part, and cause remanded to the end that an order may be passed directing an audit to be filed and distribution made in conformity with this opinion, the costs to be paid out of the funds in the hands of the receiver.*