## CAMDEN SEWER COMPANY *v.* MAYOR AND COUNCIL OF SALISBURY.

[No. 46, January Term, 1929.]

*Decided April 2nd, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George H. Myers,* with whom were *Wailes & Robins* and *Miles & Myers* on the brief, for the appellant.

*Hooper S. Miles, City Solicitor,* and *Miles & Bailey,* submitting on brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The question presented by this appeal is of some importance by reason of the fact that it relates to a matter of practice in the equity courts; and it is, whether or not an order of the chancellor, ratifying the act of a complainant in dismissing its bill of complaint by filing an order of dismissal with the clerk of the court, without first making application to the chancellor for an order of dismissal, will have the effect of dismissing the bill over the objection of the defendant. The facts which present the question are briefly these: On July 7th, 1902, the Mayor and Council of Salisbury, the appellee, passed an ordinance permitting the appellant to lay sewer pipes in or under certain of the streets of the City of Salisbury. By section 4 of said ordinance it was provided:

> "In consideration of the permission hereby and herein granted be it further enacted, and it is hereby expressly understood and agreed, that the Mayor and Council shall have the option and right at any time of buying from said parties (herein called the Camden Sewer Company), their heirs, legal representatives and assigns, all their interest in the said pipes

put down by them under the authority of this ordinance upon paying the cost thereof, and of the laying of the same, with interest to the time of such purchase; and thereupon to take and assume absolute control and ownership thereof."

On July 7th, 1926, the appellee wrote to the appellant stating:

"The Salisbury Water and Sewer Commission, an Agency of The Mayor and Council of Salisbury, hereby requests from you a full and complete statement, giving dates of construction of the various units of all sewers owned by the company and costs of same, located in Salisbury, Maryland. This statement should also include interest on said items from the time such construction was made up to July 19th, 1926. This statement is desired for the purpose of enabling the Mayor and Council of Salisbury to exercise its option to purchase your sewer system in accordance with the terms of your charges as contained in Chapter 12 of the Acts of the General Assembly of Maryland, Session of 1904, and likewise also contained in Section 4 of an Ordinance of the City of Salisbury, passed on July 7th, 1902, to the same effect. It is preferable that this statement, in addition to being complete within itself, should also be supported by an affidavit of one of your officers, who is in position to make oath as to its correctness, but the condition last mentioned is merely a request inasmuch as in said Ordinance and said Act of Assembly, no provision is made which would enable us to demand that you support your statement by affidavit. We request the above information to be in the hands of the Salisbury Water and Sewer Commission on or before noon July 17th, 1926, and your failure to render *you* such a statement within the above time will be taken for granted that you refuse to furnish the same."

On July 16th, 1926, the appellant replied as follows:

"We are in receipt of your letter of July 7th, requesting us to submit a statement of the cost of con-

structing the Camden Sewer Company's sewer system for the purpose of enabling the Mayor and Council of Salisbury to exercise its option to purchase said system. In reply thereto, we wish to say that, if the Mayor and Council desire to exercise their option to purchase our system, we desire to have all of our claims against the Mayor and City Council growing out of the use and abuse of our sewer system settled at the time the option is exercised. You are, of course, aware of the fact that the Mayor and Council of Salisbury have been using our sewer system for a number of years to carry off surface water and that by so doing they have subjected us to much annoyance and considerable expense. We now have pending two suits against the Mayor and Council, and in addition to that we have some claims for damage on which suit has not yet been brought. We will sell to the Mayor and Council of Salisbury our sewer system and make settlement of the claims which we have against said Mayor and Council for damage for the sum of Twenty-five Thousand Dollars ($25,000.00), upon condition that the Mayor and Council pay the costs of suits now pending and that we be permitted to connect seven (7) residences with said system for persons who have already engaged same from us."

Subsequently, on August 2nd, 1926, the appellee filed its bill of complaint in the Circuit Court for Wicomico County against the appellant, in which the provisions of the ordinance are set out, and especially that portion of section 4 which we have quoted. The bill then alleges that, in pursuance of the terms of the ordinance, the plaintiff notified the defendant of its desire and purpose to purchase the pipes put down by the defendant in pursuance of the ordinance, at the cost thereof and of laying same, with interest to the time of said purchase, and has requested the defendant to submit to the plaintiff the cost of said pipes and the cost of laying the same, together with the defendant's computation of interest on the aggregate amount thereof, but the defendant has failed and refused to do so and has further

refused to grant the plaintiff permission to examine the books and records of the defendant in order to ascertain the cost of said pipes and of laying the same; that by a proper construction of the aforesaid ordinance, and particularly in view of the provisions of section 4 thereof, the plaintiff is entitled to receive from the defendant, upon demand, an itemized statement of the cost of the pipes laid by it and the cost of laying the same pursuant to the franchise granted, together with a statement of the defendant's computation of interest thereon, and is further entitled to verify the same by comparison with the books and records of the defendant; that the plaintiff is without adequate remedy at law, and, unless the defendant is required to submit such a statement to it and to permit the plaintiff to verify the same by comparison with the books and records of the defendant, the inhabitants and taxpayers of the City of Salisbury will suffer great and irreparable damage and injury and will be forever deprived of the right to acquire and operate in the name of and on behalf of the plaintiff the sewerage system now conducted and maintained by the defendant. A further allegation of the bill is that the plaintiff is ready, able and willing to pay to the defendant the cost of the pipes laid by it, together with the cost of laying the same, with legal interest thereon, upon learning the true and correct amount thereof. The prayers of the bill were, that the ordinance be specifically enforced; that the defendant be required to produce its books and records pertaining to the cost of the sewerage system maintained and operated by it in pursuance of said ordinance in order that the court might determine the amount to be paid by the plaintiff for the property; that the defendant be required to transfer and assign unto the plaintiff said sewerage system in accordance with said ordinance, upon making such payment; and for general relief.

The defendant, in its answer filed September 21st, 1926, denied that the plaintiff had notified the defendant of its purpose to purchase the sewerage system constructed in pursuance of the ordinance; admitted that the Salisbury Water and Sewer Commission requested the defendant to submit

to it the cost of said pipes and the cost of laying the same, together with the defendant's computation of interest to July 19th, 1926, but denied that the defendant had failed to do so, and alleged on the contrary that the defendant had submitted to the Salisbury Water and Sewer Commission an approximate cost of the pipes, together with the cost of laying same and interest thereon, together with damages sustained by the defendant by reason of the improper and unlawful use of said pipes; also denied that the defendant refused to grant the plaintiff permission to examine the books and records of the defendant, but alleged that the plaintiff had never requested the defendant to permit it to examine its books. It is further stated in the answer that the books of the defendant will not show the cost of the pipes and laying same, as much of the expense connected with laying the pipes has never been entered upon the books of the defendant; and finally the answer asks that the defendant be dismissed with its reasonable costs.

Subsequently the appellee filed its petition, in which it is alleged that the defendant, since the filing of the bill of complaint, has denied the plaintiff an opportunity of seeing its books and having the same examined by an accountant for the purpose of determining whether or not such books of account would give any information as to the dates when the various units of the defendant's sewerage system were constructed and the original costs of such construction, and that the plaintiff will be at great disadvantage in showing the amounts which have been expended by the defendant in the construction of the sewer system unless the defendant be compelled to produce its books before the court for inspection by the court and the plaintiff. The petition then asks that an order be passed setting the cause for hearing and commanding the defendant to produce at such time all the books, accounts, receipts, contracts, vouchers, and, in general, all information whatsoever in his possession as will in any manner show or tend to show the date that the sewers belonging to the defendant were constructed, together with the costs of such construction. The chancellor on the same

day passed an order in conformity with the prayers of the petition.

On February 28th, 1927, counsel for the respective parties agreed that the books, accounts, receipts, contracts, vouchers, and all other information produced by the Camden Sewer Company in compliance with the order of court be referred by the court to the auditor with directions to state an account in accordance with the purposes of the proceedings, and with the privilege on the part of the respective parties to have reasonable access to such books, etc., while the same are in the possession of the auditor for the purpose of enabling the parties to file any exceptions they may deem necessary to his findings. The chancellor then referred the matter to the auditor to state an account, which was done, showing an aggregate cost of construction, with interest to March 1st, 1927, of $18,518.66. Subsequently the auditor's report was filed, and certain testimony taken in respect thereto. Exceptions were filed to the audit by both of the parties. Whereupon the audit was rejected, and by oral order the chancellor directed that a new audit be made, in conformity with his oral directions as to what it should contain. This second audit was filed June 18th, 1928, and four days later, on June 22nd, 1928, the plaintiff through its solicitors filed this order: "Mr. Clerk: Please mark the above entitled case 'dismissed.'"

After the filing of the order to dismiss, the court, upon the petition of the defendant, set the case for final hearing on August 27th, 1928. At this hearing the contention was made by the defendant that the order of dismissal was invalid and of no effect. The court then "adjudged, ordered and decreed, if the said order dated August 25, 1928, and filed in this cause is to be considered in effect a motion *ne recipiatur* as to the plaintiff's order for dismissal of the case filed on June 22, 1928, that it be and the same is hereby overruled and the order of the plaintiff filed on June 22, 1928, dismissing the case be and the same is hereby ratified and the cause declared dismissed"; from which order the appeal here was taken.

It appears that, at the time the order of court setting the case for final hearing upon the petition of the defendant was entered, the order of dismissal had been already filed, and while there is nothing on the face of the petition which would permit us to hold that it was a motion *ne recipiatur* as to the order of dismissal, nevertheless it was so argued at the final hearing, at which hearing the court confirmed and ratified the order of dismissal. We are not to be understood as approving or sanctioning a practice which treats a petition and order to set a case for final hearing as a motion *ne recipiatur* as to a paper precedently filed in the case; yet, as the chancellor, by his order from which the appeal is taken, ratified and confirmed the order of dismissal, we will consider the question sought to be raised on the appeal, namely, whether or not the complainant, under the circumstances of this case, had the right to dismiss its bill of complaint. The proper practice requires that the complainant make application to the court for leave to dismiss, and this practice should be followed; but, the court having subsequently ratified what was done, the legal effect is the same as if application had been made to and granted by the court for leave to dismiss, upon the principle that a court will ratify that which has been done, which it would have ordered to be done, had application therefor been made. Therefore the case is now in the position in which it would have been, had application been made by the complainant to the court for leave to dismiss the bill, and that application had been granted.

There is nothing in the record to indicate whether the costs accrued to the time of filing the order of dismissal were paid by the appellee, although it is stated in the appellee's brief that such is the case, and not denied; and we assume, therefore, that such costs were paid by the appellee. When the usual and proper practice is followed of making application to the court for leave to dismiss, the order granting the dismissal contains a provision that the plaintiff pay the costs, or, in other words, that the right to dismiss is granted upon payment of costs. While such is the usual form, we are of the opinion that the dismissal of a

proceeding by the complainant would result in his being liable for costs, whether such a provision was contained in the order of court or not. Therefore, if, as a matter of fact, the complainant here has not paid the costs, it is liable therefor. The general rule is that a complainant may at any time dismiss his bill upon payment of costs. *Miller's Equity Proc.,* p. 132. In 10 *R. C. L.* 526, sec. 312, the rule is thus stated: "Being the mover of the suit, the plaintiff is recognized as being also the master of the litigation; and hence although he can dismiss only with leave of the court, he is usually allowed the privilege of dismissing at his own costs as of course at any time before the cause is heard and adjudicated on the merits." As was said by Chancellor Bland in *Hall v. McPherson,* 3 Bland, 534: "The application of a plaintiff to dismiss his bill is one which is ordinarily granted as of course at any stage of the proceedings on the payment of costs." See also *Johnson v. Hambleton,* 52 Md. 384; *Chappell v. Chappell,* 82 Md. 648. But the rule is not without exception, this exception being thus stated by Mr. Miller: "When there has been any proceeding in a cause, which has given the defendant a right against the plaintiff, the latter cannot dismiss his bill as of course." See *Daniels, Chancery Pl. & Pr.,* 790. In *Hall v. McPherson, supra,* in which a bill was filed by the executor of a deceased partner against the copartner for an accounting, it was said: "But in this case there having been a decree to account, each party has been thereby virtually clothed with the rights of an actor; * * * So the plaintiff cannot, as under other circumstances, be allowed at his pleasure, after such a decree, to dismiss his bill on the payment of costs, but can only get rid of it by a final decree, or by availing himself of the negligence or default of the defendant after he has been called upon to proceed; and, therefore, after a decree which thus gives the defendant an interest in the further prosecution of the suit, the plaintiff can only have entered upon the docket the common rule further proceedings, so as thereby to lay a foundation for obtaining leave to dismiss the bill at the next term." In *Riley v. First Nat. Bank,* 81 Md. 14,

in speaking of the necessity of obtaining leave of court to dismiss, our predecessors said: "After a bill has been filed and proceedings had under it, when counsel have appeared and costs have been incurred, it would be an unfair advantage to allow to the plaintiff's attorney the right to dismiss his client's complaint as to parties, either plaintiff or defendant, without the previous sanction of the court."

It appears, therefore, to be well settled that when equity proceedings have progressed to such a point as to entitle the defendant to affirmative relief, or where, as stated by Chancellor Bland, he becomes virtually clothed with the rights of an actor, the right of the complainant to dismiss as a matter of course ceases. We are of the opinion that ordinarily and as a general rule the complainant is master of his own litigation and has the right to dismiss his proceedings at any time up to a final determination of the case, by following the approved practice of making application to the court for leave so to do; but that when at any point of the proceedings the defendants become entitled to affirmative relief which it is proper for them to enforce in the proceedings then pending, the complainant no longer, as of course, has the right to dismiss; and further, that whenever a bill of complaint is dismissed and the order of dismissal is silent as to the costs, the complainant is responsible for the payment thereof. Applying these principles to the facts in this case, we have no doubt that the complainant had the right to dismiss its bill upon application to the court, and that the subsequent ratification by the court is equivalent to leave having been obtained.

The contention of the appellant is that the action of the appellee in filing the bill of complaint converted what theretofore had been an option into a contract, which the appellant was entitled to have specifically enforced. Upon that question we express no opinion. But whether such contention be sound or not, the appellant acquired no right by the institution of the suit which it would lose by the dismissal of the bill. In other words, if the correspondence in the record between the appellant and the appellee, and the institution

of the suit, constitute an exercise of the option to purchase by the appellee, it remains an exercise of the option, without regard to whether the bill has been dismissed; the exercise of an option being a state of mind evidenced by the surrounding circumstances, including words and acts of the party said to have so exercised the option. There is nothing in the dismissal of the bill which would prevent the appellant from filing a bill for specific performance against the appellee, and if the conduct of the appellee has been such as to constitute an exercise of the option by it, the appellant in such a suit would be entitled to specific performance. Whether the appellee's acts and conduct do constitute an exercise of the option is not important for the determination of the question before us, and, as indicated, we refrain from expressing any opinion in that respect.

> *Decree affirmed, with costs in this court, and the costs below accruing subsequent to the order of dismissal filed by the appellee on June 22nd, 1928, to the appellee.*