LOUIS MENDELIS ET AL *v.* WILLIAM F. BROENING, RECEIVER

[No. 67, January Term, 1935.]

*Decided April 3rd, 1935.*

The cause was argued before BOND, C. J., URNER, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Jacob Kartman* and *Cornelius P. Mundy,* with whom were *Herbert Levy* and *Tydings, Walsh, Levy & Archer* on the brief, for the appellants.

*J. LeRoy Hopkins,* with whom was *Lawrence S. Kaufman* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

On June 20th, 1933, after appropriate preliminary proceedings, which originated upon petition of certain free shareholders of the First Lithuanian Building & Loan Association of Baltimore City, a receiver was appointed to take charge of the assets of this institution. Subsequently thereto other free shareholders, appellants on this record, filed a petition in which it was represented that the cash position of the association had been materially improved since the receiver's appointment, and there was no good reason why its management should not then revert to the members of the association. This petition concluded with a prayer that the court require the receiver to state an account, and that he thereupon be discharged. The chancellor passed an order upon the petition, refusing the relief prayed, but requiring the receiver to file an answer within ten days, and reserving to each side the right to take testimony. Answers were

thereupon filed by the free shareholders at whose instance the receiver was appointed, as well as by the receiver, in both of which appellants' application for the discharge of the receiver was resisted. Shortly thereafter, on December 7th, 1934, the receiver filed his report, a part of which consisted of an audit or statement previously made by a certified public accountant, which statement counsel have agreed may be considered by us without waiver of objections by appellants. With reference to this statement, it is to be observed that if a court audit was essential, there is and has been no contention that this audit or statement gratifies this requirement, and this is readily understood, when it is considered that no dividend was stated in connection therewith, no order *nisi* was passed thereon, and, further, the parties affected by it were not notified of its filing, as provided by rule of the lower court, to which reference will subsequently be made.

On December 20th, 1934, the receiver filed a petition with the court, in which he sought authority to pay in full at that time one hundred free shareholders whose accounts were under five dollars and to pay a ten per cent. cash dividend to all other free shareholders, without having the court auditor make an audit stating such distribution, because of the time which the statement of such an account would consume, it being represented that the shareholders were urgently in need of funds at that season of the year. This petition was presented to the court in chambers, but in the presence of counsel for appellants, over whose objection the chancellor immediately passed an order authorizing the receiver to make such distribution. On the same date counsel for appellants filed a petition with the court, in which it was recited that their petition for the receiver's discharge was still pending before the court; that they were in the process of analyzing the report of the receiver, which included the account or audit above referred to, and notwithstanding this the receiver had prepared to pay the dividends above mentioned to free shareholders with-

out having an auditor's account stated; that their counsel had recently learned of this purpose, and had appeared before the chancellor at the time the order was signed authorizing such distribution, and it had been signed over their objection, thus depriving them of an opportunity to make objections, and file exceptions to such claims as might be improper, illegal, or unwarranted. The petitioners prayed that the court rescind its order passed earlier in the day directing such distribution, so that distribution, if made, should be had in the regular manner, with full opportunity to petitioners to make proper objections and exceptions thereto. The court refused to rescind its order authorizing distribution, giving as a reason therefor that the petition to discharge the receiver had long been pending; that checks for the dividends were then ready for mailing, depositors were in need of dividends; and he had reasonable assurance from the receiver that the books showed to whom such dividends were payable, and if any error should be detected in a later audit, it could then be corrected in the succeeding dividend, and he saw no reason for the extra expense and delay of a formal court audit when the matter could be safeguarded in subsequent distribution. From this order appellants appeal, as well as from an order passed by the court on January 7th, 1935, upon application of appellants, to dismiss their petition for discharge of the receiver, which order was passed by the court after appellants' counsel had filed, with leave of court, an order to dismiss the petition. The chancellor later added thereon that the cause was ready for hearing before him, witnesses and counsel were present, and he authorized and directed the dismissal of the petition, "but not without prejudice." This order was passed in open court, after a lengthy colloquy between court and counsel for the parties, and for the purpose of this opinion it need not be detailed here. However, we are convinced that the chancellor, who had had the petition for the receiver's discharge before him for several months, and who, it appears, had recently discussed the matter with

counsel for appellants, felt that the object of the order for dismissal, which, as stated, was filed only after all the parties were present and ready for hearing, was to secure a further postponement.

The general principles announced by decisions of this court and other jurisdictions undoubtedly give a plaintiff in a chancery suit the right to dismiss his proceedings, unless they have reached such a point that the opposite party has acquired rights against him. *Camden Sewer Co. v. Salisbury*, 157 Md. 175, 145 A. 497; *Riley v. First National Bank*, 81 Md. 14, 31 A. 585; *Bank v. Rose*, 1 Rich Eq. (S. C.) 292, 294; *Miller on Equity Procedure*, page 132. However, the effect of this order would seem to be unimportant, since we do not construe it as a denial to appellants of the right at some later stage of the proceedings to file another petition seeking to have the receiver relieved of his duties. It expressed only the chancellor's disapproval of what he regarded as an attempt to deprive him of then hearing the matter upon its merits. Therefore, since we have no doubt that it could not preclude appellants from renewing their petition at some later stage of the receivership proceedings, they were not injured thereby, for which reason the order should not be reversed.

The substantial question appearing upon this record involves the correctness of the order passed December 20th, 1934, in which distribution was authorized without an audit first having been made. Rule 15 of the Circuit Court No. 2 of Baltimore City, which is before us, provides that, at the time an auditor shall file an account with the clerk in any cause referred to him, he shall give notice by means of a postal card to every party to the cause, or his solicitor, of the fact of filing, the time of filing, and of the day when, in the absence of objection, the same may be ratified, and such report shall legally stand for confirmation after the tenth day, reckoning from the day of filing, unless exceptions shall have been previously filed to the same. Therefore, had the court required an audit in this case, the same could have been ratified within ten

days, unless some interested party had felt himself injured by its terms and had objected thereto. Section 19 of article 16 of the Code provides for the appointment of auditors by judges of courts of equity, and further provides: "And all accounts to be stated, audited, or settled by such court, shall be referred for such purpose to the auditor," etc. The language of this section has existed as a part of the statutory law of this state without substantial change since the passage of chapter 72 of the Acts of 1785, in construing which original act Chancellor Bland, in the case of *Dorsey v. Hammond,* 1 Bland, 463, 467, said, "But the Chancellor has been authorized to appoint an auditor during his pleasure. [1785, ch. 72, sec. 18.] This auditor is the calculator and accountant of the court. He is stationed near to the Chancellor, and, when any calculations or statements are wanted, all the pleadings, exhibits and proofs are put into his hands, so as to enable him fully to investigate, and put the whole matter in proper order as required. As an incident to every reference of a case to the auditor, he is thereby virtually, if not expressly, as under a commission to audit accounts, authorized to take any testimony deemed requisite in relation to any account which may be necessary or which the parties may desire to be stated by him." Again, in the case of *Townshend v. Duncan,* 2 Bland, 45, 75, the court, in referring to the same act, said: "But there is nothing in that, or in any other legislative enactment which either expressly, or virtually withholds from the auditor any other authority which necessarily or properly belongs to his office; or which abrogates any powers or duties which had been assigned to masters in Chancery, to commissioners to audit accounts, to an auditor, or to any other similar officer, whose assistance the Chancellor had found to be useful, or indispensably necessary to the proper exercise of his jurisdiction."

The cases of *Wisner v. Wilhelm,* 48 Md. 1; *Barroll v. Forman,* 88 Md. 188, 40 A. 883; *Morris v. Bright,* 126 Md. 286, 94 A. 914; *Derlin v. Derlin,* 142 Md. 352, 121 A. 27; *Frock v. Columbian Const. Co.,* 142 Md. 413, 121 A. 366,

might also be cited as illustrative of the fact that the established practice in this state has been to refer to the court auditor such proceedings. The matter finally resolves into this question: Was this order, passed as we have observed in contravention of the generally accepted and established principles of equity jurisprudence in this state, improper? Appellee, while conceding the correctness of these general principles, nevertheless contends that in this particular case no injury was done appellants, or in any event any error which may have occurred can be adjusted when a formal audit is made, before a further dividend is declared. But do the facts appearing on this record justify this contention? While it may later prove to be true, still, if from a consideration of the record we cannot determine it to be correct, the order should be reversed. In this case appellants own and represent 289 free shareholders whose accounts total $623,501.27 out of a total number of 671 such free shareholders with accounts amounting to $759,920.49, yet by his order the chancellor authorized distribution of more than $7,500 of the cash assets in the receiver's hands without affording them an opportunity of having a statement before them for consideration. In their petition for rescission of the order it was alleged that they had been engaged in attempting to analyze the statement or audit made by the certified public accountant, and were then in the process of analyzing the receiver's report, but by the court's action they were deprived of the opportunity of making objections and filing exceptions to the allowance of such claims as might be improper. As free shareholders they had rights which were entitled to protection, but if it should develop that by virtue of this order a dividend was paid to one or more persons not entitled to receive it, and such parties were irresponsible financially, what redress could the court give them, even though such mistakes were shown in an audit thereafter made? Manifestly, however meritorious their objections, appellants would be without protection, because the receiver had paid the dividends under an order of court and his bond would not be

liable for any such errors. Plainly, it is not sufficient to sustain the order because we cannot definitely say they have not been injured thereby, when there has been no opportunity afforded them to object and show such injury, but it is our duty to reverse if we feel an injury may have been committed against any one who was denied such privilege. If it develops that none of appellants have been injured by the court's action, this course can do no injustice, while, on the other hand, if funds have been erroneously distributed to their injury, the receiver's bond should be liable therefore.

Concededly, the motives of the receiver and the chancellor were laudable, but this fact cannot justify so radical a departure from the settled and established chancery practice in this state, without an affirmative showing that appellants were uninjured thereby, a fact which is not shown from the record.

*Order of December 20th, 1934, reversed, and order of January 7th, 1935, affirmed, with costs to appellants.*