SHAPIRO, Administrator *v.* RYAN

[No. 17, September Term, 1963.]

*Decided December 3, 1963.*

The cause was argued before the full Court.

*George L. Clarke,* with whom were *George W. White, Jr., T. Leo Sullivan* and *Buckmaster, White, Mindel & Clarke* on the brief, for the appellant.

*Paul Berman* and *Bayard Z. Hochberg,* with whom were *A. Freeborn Brown* and *T. Carroll Brown* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

This is an appeal by Emanuel G. Shapiro from an order of the Orphans' Court for Harford County holding him in contempt of court for his refusal to testify when ordered to do so by that court. Shapiro had been appointed administrator of the estate of Joseph Shapiro, his father, after the latter died intestate on August 9, 1959. Joseph Shapiro was survived by his widow, Ida Shapiro; their son, Emanuel G. Shapiro, the appellant; and two grandchildren, Charles H. Ryan and Elaine A. R. Nesbitt, who were the children of a deceased daughter. The appellant failed to list the grandchildren as heirs of his father, and distributed the entire estate to himself after taking an assignment from his mother of her share of the estate. Approximately twenty-two months after the filing of his first and final account in the Orphans' Court, the appellant filed a petition alleging that he had erroneously failed to list the grandchildren, Ryan and Nesbitt, as heirs of the decedent, and prayed that they be so listed. The Orphans' Court so ordered. The appellant settled with Nesbitt for her share of the decedent's estate, but has been unable to reach any accord with Ryan.

On May 7, 1962, Ryan filed a bill in equity in the Circuit Court for Harford County against the appellant individually and as administrator, seeking a discovery and accounting of rental income and proceeds of real property sales made by the appellant after his father's death, a disclosure of the remaining real property of the decedent, and a declaration that the assignment to the appellant by Ida Shapiro of her share in the decedent's

estate was void by reason of her age and mental incompetency. The bill also named Ida Shapiro as a defendant and prayed an injunction to restrain both defendants from making any further sales of the remaining real property pending a determination of Ryan's rights. On the next day, May 8, 1962, Ryan filed a petition in the Orphans' Court for Harford County charging that the appellant had appropriated assets of the estate to his own use, and asking for his removal as administrator, and an accounting. On May 21, 1962, the appellant answered, admitting Ryan's interest in the estate, but denying any wrongdoing. On June 13, 1962, the appellant filed a combined demurrer and answer to Ryan's bill in equity, in which, *inter alia,* he averred that he was ready, willing and able to account to Ryan for any and all property, real and personal, to which the latter might be entitled from his grandfather's estate, and in which he mentioned a petition which he intended to file in the equity case requesting the court to appoint an auditor to determine the extent of Ryan's interest in "said property". On July 13, 1962, the appellant filed such a petition in the equity case, in which he admitted that Ryan was entitled to an accounting and discovery of all matters relating to his interest in both the real and personal estate of the decedent, and asked that the matter be referred to a master or auditor to determine Ryan's interest in both the real and personal estate and that an attorney be appointed to search title to all realty owned by the decedent at his death in order to ascertain the nature and extent thereof. In his answer to this petition, Ryan urged that "the right to effective cross-examination of the defendant, Emanuel G. Shapiro, under oath, would be frustrated by referring the taking of testimony to an auditor," but stated that he "would have no objection to sending to an auditor the testimony taken in open court for the statement of an account," and agreed that Shapiro's petition be granted to that exent, and that a competent attorney be appointed to search title to the decedent's real estate. The equity court has not yet passed upon the original bill or the appellant's petition of July 13, 1962, nor do the docket entries show that either party has requested a hearing thereon.

A hearing before the Orphans' Court on Ryan's petition for

removal of the appellant as administrator was scheduled for February 16, 1963, but late on the afternoon of February 15, 1963 counsel for appellant notified Ryan's counsel of his intention to file a petition to stay proceedings, pending a determination by the Circuit Court of whether an auditor should be appointed. At the hearing before the Orphans' Court on the following day, the appellant's petition for a stay was denied and the appellant was ordered to testify. Acting on advice of counsel, appellant refused to comply on the ground that all matters in' dispute between the parties should be determined in the equity court because of its ability to afford complete relief in a single proceeding. He then left the court. Thereafter, on February 19, 1963, the Orphans' Court passed an order holding appellant in contempt. The order also revoked appellant's letters of administration, forfeited all commissions previously received by him as administrator, committed him to the county jail until he should purge his contempt by giving evidence before the court, but authorized the Sheriff to release him from custody under a $5,000 bond, and ordered him to pay all costs of the proceeding. On February 20, 1963 the appellant filed an appeal to the Circuit Court for Harford County, as permitted by Code (1957), Art. 5, Sec. 25, from the refusal of the Orphans' Court to stay the proceedings, and an appeal to this Court, under Secs. 9 and 18 of the same Article, from the order of February 19, 1963, holding appellant in contempt, revoking his letters and imposing other sanctions.

In determining whether the appellant was properly held to be in contempt we must recognize a distinction which is well established in the law of contempt. This is the distinction between disobedience to or violation of an order of court which is void for lack of jurisdiction of the court to pass the order, and disobedience to or violation of an order which is merely erroneous due to a mistaken view of the facts or to a mistaken view of the law on the part of the court making the order, but is one which the court had jurisdiction to pass. An adjudication of contempt in the first situation may not be sustained, while a finding of contempt in the second situation will ordinarily be upheld. *Donner v. Calvert Distillers Corp.,* 196 Md. 475, 489, 77 A. 2d 305 (1950) ; *Sheets v. City of Hagers-*

*town,* 204 Md. 113, 124, 102 A. 2d 734 (1954). See also *United States v. Mine Workers,* 330 U. S. 258 (1947) ; *United States v. Shipp,* 203 U. S. 563 (1906). And see 17 C.J.S. (1963), *Contempt,* Sec. 14.

There can be no question but that, primarily, the subject matter of the appellee's petition of May 8, 1962, in the Orphans' Court was within the jurisdiction of that court and that the court had jurisdiction over the parties. Under Secs. 259, 263 and 271 of Art. 93 of the Code (1957), the Orphans' Court would have jurisdiction to proceed to hear and determine the appellee's claim to a share in the estate of his grandfather, his demand for an accounting, his charges of misappropriation of assets and his petition for the removal of the appellant as administrator. See *Parker v. Leighton,* 131 Md. 407, 102 Atl. 552 (1917) ; *Alexander v. Leakin,* 72 Md. 199, 19 Atl. 532 (1890) ; *Wingert v. State,* 125 Md. 536, 94 Atl. 166 (1915) ; *Hagerstown Trust Co., Ex. of Mealey,* 119 Md. 224, 86 Atl. 982 (1913) ; Sykes, *Probate Law and Practice,* Secs. 203, 861, 862. The Orphans' Court has power to examine administrators as to their conduct of the administration of estates in their care. *Hignutt v. Cranor,* 62 Md. 216 (1884) ; Sykes, *op. cit. supra,* Sec. 203 (Vol. I, p. 212). Also, the Orphans' Court is empowered by Sec. 266 of Art. 93, "if a witness before the court shall refuse to give evidence, [to] commit him to the custody of the sheriff * * * until he give evidence or be discharged according to law." See *Wingert v. State, supra.*

The appellant in the case before us claims lack of jurisdiction in the Orphans' Court to adjudge him in contempt—not because of a basic lack of jurisdiction over the subject matter or over the parties, but on the ground that the pending equity suit deprived the Orphans' Court of jurisdiction, or at least suspended its jurisdiction. After pointing out that the Orphans' Court lacked jurisdiction to determine the matters pertaining to the real estate of the decedent, and the validity of the assignment from Ida Shapiro to the appellant, the latter asserts that equity had jurisdiction of all the matters in dispute between the parties under the doctrine that equity will grant complete relief.

The principle is firmly established in the law of this State

that when the Orphans' Court is unable to afford a complete and adequate remedy, equity will assume jurisdiction. In *Tribull v. Tribull,* 208 Md. 490, 119 A. 2d 399 (1956), a case involving the question whether a residuary legatee of an estate could properly sue in equity to set aside a transfer of a savings account by the testatrix where the executor refused to sue, Chief Judge Brune reviewed the authorities, citing such cases as *Turk v. Grossman,* 176 Md. 644, 6 A. 2d 639 (1939) ; *Noel v. Noel,* 173 Md. 147, 195 Atl. 322 (1937) ; and *Bennett v. Rhodes,* 58 Md. 78 (1882). After quoting from *Boland v. Ash,* 145 Md. 465, 474, 125 Atl. 801 (1924), for the proposition that "* * * where by reason of some inherent and constitutional limitation of its powers, the orphans' court, the forum in which relief would be naturally and ordinarily sought, is unable to afford a complete and satisfactory remedy, then equity will lend its aid", and pointing out that the Orphans' Court could not try the issue of the validity of the bank account, Judge Brune said:

> "* * * The problem, in the light of the authorities above referred to, is one of the exercise, rather than of the existence, of jurisdiction. We think that the case is one in which equity can give full relief and that all necessary parties are before the court. Undoubtedly, the case is one which falls short of the cases in which fraud or collusion on the part of the executor or administrator has been present as a factor supporting the exercise of equity jurisdiction. However, neither is essential to the exercise of equity jurisdiction in cases involving the administration of estates; the inadequacy of the powers of the orphans' court may be sufficient. * * *"

The appellant here, both in this appeal and in argument before the Orphans' Court, relied mainly on the case of *Noel v. Noel, supra* (173 Md. 147, 195 Atl. 322 (1937)). In that case an intestate's mother filed a petition in the Orphans' Court to revoke letters of administration granted the intestate's widow, alleging that the widow had failed to include certain personalty in her inventory. The widow, in her individual capacity alone,

then brought a suit in equity against the mother and the intestate's sister to determine the ownership of the contested personalty. The widow later intervened as a plaintiff in her capacity as administratrix, and her right to sue in equity was upheld against a demurrer. Thereafter the Orphans' Court, after refusing to grant a stay of proceedings in that court, passed an order requiring the widow to answer the mother's petition within 15 days. On appeal, this Court reversed, holding that the Orphans' Court should have granted the stay until the conclusion of the suit in equity, since the Orphans' Court, unlike the equity court, did not have the power to determine the questions involved, stating (at p .151 of 173 Md.) :

> "* * * Equity jurisdiction was sustained on that appeal [the appeal involving the equity case: *Noel v. Noel,* 173 Md. 152, 195 Atl. 315 (1937)] because the jurisdiction of the Orphans' Court was inadequate and incomplete and did not include, as did the court of equity, the power of the determination of questions of partnership, of the creation of express and implied trusts and their associated relations of fiduciary and beneficiary, and the determination of title to personalty between conflicting claims on behalf of the estate of the intestate on the one hand, and the mother and sister of the intestate, on the other. In consequence of its more extensive jurisdiction, and of its superiority of remedy and relief, equity had paramount authority, and will retain its jurisdiction for such relief as may be necessary, and, while so exercising this jurisdiction, further proceedings on the pending proceedings in the Orphans' Court should be stayed. See *Wingert v. State,* 132 Md. 243, 246-248, 103 A. 437."

We believe that the rationale of the *Noel* case is controlling here. Equitable jurisdiction was invoked by Ryan himself when he filed suit in the Circuit Court on May 7, 1962. Although his bill pertained to matters involving the decedent's real estate (as well as to the validity of Ida Shapiro's assignment to the appellant), he, in effect, consented or submitted to proceeding in the equity court with respect to the personal estate

by his answer to the appellant's petition of July 13, 1962, which sought a determination of Ryan's interest in all of the real and personal estate of the decedent. Therefore, as in the *Noel* case, both parties had subjected themselves to the jurisdiction of the court of equity, before the hearing in question was held by the Orphans' Court. In the instant case, as was true in the *Noel* case, there were matters in controversy which could be adjudicated only by the equity court. The Orphans' Court was without power to compel a discovery and accounting of rental income and proceeds of real estate sales, or a disclosure of the remaining real estate, or to issue an injunction, or to declare the assignment by Ida Shapiro to be void by reason of her age and mental incapacity. Cf. *Hayden v. Burch,* 9 Gill 79 (1850) ; *McComas v. Wiley,* 132 Md. 406, 104 Atl. 52 (1918) ; and *Kearney v. Turner,* 28 Md. 408 (1868). Hence, only the equity court had power to afford a complete and satisfactory remedy as to all issues before it. The same operative facts would, it appears, be determinative as to whether the administrator should be removed and his commissions forfeited as would be determinative of the controversies before the equity court. As to their determination, the equity court has, we think, paramount jurisdiction. Therefore the jurisdiction of the Orphans' Court had been temporarily suspended pending a determination of the case by the court of equity, and thus the Orphans' Court lacked the power to act at the time when it ordered the appellant to testify and held him in contempt for his refusal to do so.

The appellee relies on the case of *Jones v. Jones,* 41 Md. 354 (1875). In that case an administratrix instituted proceedings in a court of equity for the limited purpose of having the estate (which comprised only personalty) distributed under the direction of the equity court. The Orphans' Court subsequently revoked the administratrix's letters of administration for failure to render accounts and deposit funds as directed. The administratrix appealed to this Court and it was held that the institution of the proceedings in equity did not oust the jurisdiction of the Orphans' Court and afforded her no defense. But in the *Jones* case, unlike the *Noel* case and the present case, the issues involved were not beyond the authority of the Orphans'

Court, and both parties had not consented to proceeding in equity. Thus the *Jones* case is distinguishable.

The appellee makes the point that the appellant has never agreed to subject himself to cross-examination in open court in the equity case. We think this point is without force. Maryland Rule 581 a gives any party in interest the right to require that the testimony in an equity case be taken orally in open court, and by filing his petition of July 13, 1962 in the equity case the appellant subjected himself to the Rule. At the time the Orphans' Court acted upon his petition for a stay the appellant signified his willingness to submit to cross-examination in the equity case (which willingness was later expressly reaffirmed in an affidavit filed by the appellant pursuant to Rule P3 c(2) as part of the record in the contempt proceeding), and we think that the appellant would therefore be estopped from dismissing his petition of July 13, 1962 and thus avoiding the jurisdiction of equity. Furthermore, the filing of the appellant's petition in the equity case, the appellee's answer agreeing to proceed therein as to the whole estate of the decedent, provided the appellant would submit to cross-examination in open court, and the appellant's consent to do so, expressed in the Orphans' Court, so fixed the appellee's right to a complete remedy in equity as to preclude a dismissal by the appellant of his petition. *Camden Sewer Co. v. Salisbury,* 157 Md. 175, 145 Atl. 497 (1929) ; *Potomac Ed. Co. v. Pub. Serv. Commn.,* 165 Md. 458, 169 Atl. 479 (1933) ; *Mendelis v. Broening,* 168 Md. 488, 492, 178 Atl. 238 (1935) ; Miller, *Equity Procedure,* Sec. 102, p. 132.

In view of our disposition of the case, we have found it unnecessary to determine whether the contempt charged here was criminal or civil in nature. For a few of the cases which have considered this often difficult question, see *Save-Mor Drugs v. Upjohn Co.,* 225 Md. 187, 170 A. 2d 223 (1961) ; *Donner v. Calvert Distillers Corp., supra; Kelly v. Montebello Park Co.,* 141 Md. 194, 118 Atl. 600 (1922) ; *Gompers v. Bucks Stove & Range Co.,* 221 U. S. 418, 442-443 (1911).

For the reasons stated, the order adjudging the appellant in contempt, revoking his letters of administration, and subjecting him to other penalties, will be reversed without prejudice

to further proceedings in the Orphans' Court, if such prove necessary, upon completion of the proceedings in the equity court.

*Order of February 19, 1963, reversed; appellee to pay the costs.*