483 A.2d 1290

**Joan Gaven BODNAR**

v.

**Jay Royce BRINSFIELD, et al.**

**No. 181, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 16, 1984.

526

Arthur I. Messinger, Annapolis, with whom were Messinger & Mayer, Annapolis, on the brief, for appellant.

Dwight Thomey, Elkton, with whom were Baker & Thomey, Elkton, on the brief, for appellees.

Argued before BISHOP, ADKINS and GETTY, JJ.

ADKINS, Judge.

In happier days, before this case was filed in the Circuit Court for Cecil County (Rollins, J.), appellant Joan Gaven Bodnar and appellees Jay Royce Brinsfield, Robert Godfrey, and David F. McAleer were all involved in the operation of the Granary Restaurant and a marina in that county. The restaurant and marina were managed by The Granary, Inc. under a lease from Brinsfield. Brinsfield owned half the stock in The Granary, Inc.; the other half was owned by Voyageur Sail Center, Inc.

Because of differences among the individuals, Brinsfield sued Bodnar, Godfrey and McAleer for declaratory and injunctive relief. Bodnar in turn sued Brinsfield, Godfrey, and McAleer for "restaints and injunctive relief." The cases were consolidated. In due course Judge Rollins dismissed Bodnar's suit and issued a decree favorable to Brinsfield. That decree among other things voided the lease between The Granary, Inc. and Brinsfield and forfeited to Brinsfield Voyageur's stock in The Granary, Inc. The effect of the decree was to make Brinsfield the sole owner of the stock of The Granary, Inc., and to give him control of the restaurant and marina.

Bodnar's chief complaint on appeal is that no declaratory decree should have issued because two parties necessary to the proceedings—The Granary, Inc. and Voyageur Sail Center, Inc.—were never joined as parties. She also attacks what she claims is an illegal forfeiture of Voyageur's stock in The Granary, Inc. and the dismissal of her suit against Brinsfield, Godfrey, and McAleer. We see no merit in her contentions and affirm Judge Rollins's judgment.[1]

---

1. Appellee Brinsfield has moved to dismiss the appeal because of Bodnar's non-compliance with Md.Rule 1028 b. He is correct; Bodnar's record extract is inadequate. The deficiencies, however, have been supplied by Brinsfield. Because of this, and because Bodnar will be required to pay all the costs of the appeal, we deny the motion to dismiss. *Burdette v. LaScola,* 40 Md.App. 720, 395 A.2d 169 (1978).

*Facts*

Jay Brinsfield was at one time the sole stockholder in The Granary, Inc. and the owner of real estate improved by the Granary Restaurant and a marina. On March 3, 1983, The Granary, Inc. and Voyageur Sail Center, Inc. executed a stock subscription agreement by virtue of which 450 shares of the common stock of The Granary, Inc. were to be issued to Voyageur Sail Center, Inc. for a price of $252,000. Since Brinsfield then also owned 450 shares of The Granary, Inc., the effect of the agreement was to make Brinsfield and Voyageur equal owners of all the issued stock of The Granary, Inc.

On the same date Brinsfield, The Granary, Inc., Voyageur, and Bodnar, Godfrey, and McAleer entered into a stockholders' agreement with respect to the stock of The Granary, Inc. This agreement contained various provisions about the corporate structure and organization of The Granary, Inc.; it called for certain payments by the corporation to Brinsfield; and it required the corporation to provide Brinsfield with certain monthly reports. It further provided that if the payments to Brinsfield were not made or if the monthly reports were not submitted, the stock in The Granary, Inc. held by Voyageur would be forfeited to The Granary, Inc. and cancelled "so that Brinsfield shall become the sole owner of outstanding shares in the corporation."

Apparently a lease from Brinsfield to The Granary, Inc. also was executed on March 3. Because of technical problems, it was superseded by a March 15 document under which Brinsfield as lessor leased the Granary Restaurant and marina to The Granary, Inc.

It seems that all did not go well with the new venture. In August 1983, as we have recounted, Brinsfield sued Bodnar, Godfrey, and McAleer. He alleged violations of the stockholders' agreement and disputes between the parties that

---

We do not thereby condone Bodnar's neglect. Future derelictions of this sort may produce more stringent sanctions. *See Nisos v. Nisos,* 60 Md.App. 368, 483 A.2d 97 (1984).

made it impossible to operate the restaurant and marina and The Granary, Inc. He asked that Bodnar, Godfrey, and McAleer be enjoined from entering the Granary and from interfering in any manner with the conduct of the business of The Granary, Inc., and that the court declare "who are the owners of The Granary, Inc. and Voyageur Sail Center, Inc., and the extent of the interest held by each owner; who was entitled to operate the Granary business; and further [to declare] the rights and responsibilities of the parties with regard to The Granary, Inc. and all property on the premises." Neither The Granary, Inc. nor Voyageur was made a party to this suit nor was either a party to Bodnar's subsequent suit for injunctive relief against Brinsfield, Godfrey, and McAleer. In her suit, Bodnar also asked that Brinsfield's stock in The Granary, Inc. be forfeited either to Voyageur or to her. And she raised issues about a potential sale of the business.

Problems continued during the pendency of the suit. By the fall of 1983 The Granary, Inc. was having money difficulties. It required an infusion of new capital. By agreement dated October 17, Bodnar agreed to invest $50,-000 in The Granary, Inc. by October 30. The consideration for this undertaking consisted of agreements by Godfrey, McAleer, Brinsfield, and Voyageur to permit Bodnar to run the restaurant and marina without interference from the others. If, however, Bodnar did not invest $50,000 by October 30, she, McAleer, Godfrey, and Voyageur agreed to vacate the restaurant and marina and to release their interests in The Granary, Inc. to Brinsfield upon payment of $500 to McAleer and $500 to Godfrey.

After hearing, Judge Rollins declared the lease between Brinsfield and The Granary, Inc. "null and void." He found that Bodnar, Godfrey, and McAleer had failed to comply with pertinent portions of the stockholders' agreement and that Bodnar had failed to provide the $50,000 in additional capital as required by the October 17 agreement. He forfeited Voyageur's stock in The Granary, Inc. to Brinsfield and declared Brinsfield to be the sole stockholder of

the latter corporation, conditioned upon his payment of $500 to Godfrey and $500 to McAleer. He enjoined Bodnar, Godfrey, and McAleer from "interfering in any manner with the operation of the business known as The Granary, Inc. or the Granary Restaurant and marina located in Georgetown, Maryland." And he dismissed Bodnar's suit for injunctive relief.

### Necessary Parties

■ As we have observed, Brinsfield sought a declaratory judgment against Bodnar, Godfrey, and McAleer, as well as other relief. The Maryland Uniform Declaratory Judgments Act requires that "a person who has or claims any interest which would be affected by the declaration shall be made a party." Courts and Judicial Proceedings Art., § 3–405(a). Therefore, "all persons who have an interest in the declaration are necessary parties." *Bender v. Secretary, Department of Personnel,* 290 Md. 345, 350, 430 A.2d 66 (1981).

That The Granary, Inc. and Voyageur Sail Center, Inc. were necessary parties to this suit cannot be doubted. As lessee of the Brinsfield lease, which the court held void, The Granary, Inc.'s interest is apparent. As owner of 450 shares of The Granary, Inc.'s stock, which the court held forfeited, Voyageur's interest is equally clear. The Granary, Inc. also had an interest of sorts in that issue.

■ Moreover, Bodnar's failure to object below to the lack of necessary parties does not prevent her from raising that objection on appeal. Under former Md.Rule 323 a.8., which was in force when this action was filed, "[w]ant of necessary parties" was a basis for a motion raising preliminary objection but, like subject matter jurisdiction, the defense was not waived by failure to enter a preliminary objection. It could be raised "at any time." Md.Rule 323 b. The same is true under present Md.Rules 2–322 and 2–324. The presence of necessary parties "cannot be waived by the other parties to the proceedings," *Bender, supra,* 290 Md.

at 350, 430 A.2d 66, and the absence of necessary parties may be raised for the first time on appeal. *Kaliopulus v. Lumm,* 155 Md. 30, 141 A. 440 (1928).

Ordinarily, then, we would remand this case to permit joinder of The Granary, Inc. and Voyageur. *Bender, supra, Kelley v. Davis,* 233 Md. 494, 498, 197 A.2d 230 (1964). There are, however, special circumstances presented in this record that persuade us not to follow that procedure.

■ The primary purposes of the joinder requirement of § 3–405(a) are "to assure that a person's rights are not adjudicated unless that person has had his 'day in court'" and to prevent "multiplicity of litigation by assuring a determination of the entire controversy in a single proceeding." *Bender,* 290 Md. at 351, 430 A.2d 66. If these objectives are met—especially if the non-joined parties are bound by the decree—*see Williams v. Moore,* 215 Md. 181, 185–86, 137 A.2d 193 (1957)—the formal non-joinder of necessary parties may not be fatal.

■ There are occasions when those who are not parties to a suit may be bound by a judgment. "[P]ersons who are directly interested in a suit and have knowledge of its pendency and refuse or neglect to appear and avail themselves of their rights are concluded by the proceedings as effectually as if they were named in the record." *Williams v. Snebly,* 92 Md. 9, 48 A. 43 (1900). The Court of Appeals applied this rule in *Snavely v. Berman,* 143 Md. 75, 121 A. 842 (1923). There, tenants had leased a store for the purpose of conducting a "ladies and gents" furnishing business. The landlords covenanted not to lease to any other store "in the immediate vicinity" for the same type of business. Laken, another tenant in the same building, was limited by the terms of his lease to the operation of a merchant tailoring, cleaning, and repairing business, but began to sell men's furnishings. The tenants successfully sued the landlords to enjoin the latter from continuing the rental of Laken's store for that purpose. Laken was not

made a party to the suit, although he did testify in it. The Court of Appeals opined:

> While Laken was not formally made a defendant in the suit, he knew of its pendency and of its relation to his interests, and could have become a party if he had so desired, and as a witness at the trial he stated his reasons ... for conducting a men's furnishing store contrary to the terms of his lease. He is, therefore, bound by the decree [citations omitted].

143 Md. at 77, 121 A. 842.

More recently, in *Reddick v. State*, 213 Md. 18, 130 A.2d 762, *cert. denied*, 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957) the Court of Appeals considered a similar problem. *Reddick* was a declaratory judgment action in which the issue was which of two Boards of Medical Examiners was the "legal" representative of the Maryland State Homeopathic Medical Society for purposes of examining and licensing practitioners of that discipline. All the members of Dr. Reddick's allegedly illegal board were joined as defendants in the action brought by the State. None of the members of Dr. Chepko's allegedly legal board were joined. In response to an objection to lack of necessary parties under what is now § 3–405(a) the Court of Appeals, assuming that the Dr. Chepko board members were necessary parties, reasoned:

> The object of the rule that requires all necessary parties to be joined is to be sure that no one's rights are adjudicated unless he has had his "day in Court"; and that there will be a complete determination of the matters in dispute in one suit.... All of the membership of Dr. Chepko's Board testified in the present case. They were fully aware that it was being conducted, and what was involved herein. There is a well established principle of law that a person who has full knowledge of pending litigation and that it affects, and will determine, his rights, and who is entitled to appear, but who makes no effort to intervene as a party and permits a conclusion thereof without objection, such person is concluded by the

proceedings as effectually as if he were named on the record [citations omitted].

213 Md. at 30, 130 A.2d 762.

*Reddick* and *Snavely* involved the application of this principle to individuals who were aware of and participated in litigation in which they were not parties. The problem before us is the somewhat more complex one of its application to non-party corporations. The problem is more complex because of the need to determine when and how a corporation has "full knowledge of pending litigation" and when and how it participates therein to an extent that renders it bound by the judgment entered.

■ A corporation normally acts through its officers and directors. *Hall v. Barlow*, 260 Md. 327, 345, 272 A.2d 386 (1971). It frequently participates in litigation via the same officials, as through the testimony of officers and directors. If the officers and directors of The Granary, Inc. and Voyageur were aware of and participated in this action to the same extent as the individuals were and did in *Reddick* and *Snavely*, we think the corporations "are concluded by the proceedings as effectually as if [they] were named [as parties] on the record." This conclusion becomes even more apparent if the stockholders of these two closely-held corporations were so aware and so participated.[2] We turn first to Voyageur, because the record before us is somewhat murky as to its status and that of its officers, directors and stockholders.

■ There is some evidence that there was no such entity as Voyageur Sail Center, Inc. If that were so, then this non-entity could not be a party of any sort, necessary or otherwise. There is also evidence, however, that Voyageur was a New Jersey corporation. It is possible that the

---

2. The Granary, Inc. had elected to be a "close corporation" pursuant to Title 4 of the Corporations and Associations Act. Whether the Voyageur stockholders consisted of Bodnar, McAleer, and Godfrey or whether Bodnar was the sole stockholder, it is plain that the corporation was closely held.

non-existent Voyageur was a second Maryland corporation contemplated by Bodnar, Godfrey, and McAleer, but never in fact organized.

In any event, Voyageur, a New Jersey corporation, by Bodnar, as its president, signed the March 3, 1983, stock subscription agreement. Corporate records of The Granary, Inc. indicate it issued 450 shares of its stock to Voyageur. The October 17 agreement, signed by Bodnar, Godfrey, and McAleer, contains sworn statements that they executed it not only personally "but as officers and shareholders and directors of Voyageur Sale [*sic* ] Center, Inc." And in Bodnar's pleadings she asserts a claim on behalf of Voyageur—a claim for forfeiture of Brinsfield's 450 shares of stock in The Granary, Inc.

The pleadings in the case indicate that Bodnar, Godfrey, and McAleer were fully aware of the nature and object of the proceedings. Both Godfrey and McAleer appeared at the trial and testified. Bodnar also appeared, *pro se.* She did not testify, but was present during the major portion of the trial, made an opening statement, and engaged in the cross-examination of witnesses. It appears, therefore, that Bodnar, Godfrey, and McAleer, the officers, directors, and stockholders of Voyageur, were aware of and participated in the case. The corporation could scarcely have done more had it formally been made a party.

As to The Granary, Inc., its corporate records reflect that as of the date suit was filed and as of the date of trial, its principal officers were McAleer (president), Godfrey, (vice-president) and Bodnar (secretary/treasurer). Its directors were Brinsfield, Bodnar, Godfrey, and McAleer. Its stockholders were Brinsfield and Voyageur. All of these individuals participated actively in the case and all but Bodnar testified. In addition, since Voyageur was also aware of and participated in the suit, all of The Granary's stockholders also were directly involved.

■  When the owners of a closely-held corporation partic- ipate at trial "it may be presumed that their interests coincide with the corporation's interests and that one oppor- tunity to litigate interests that concern them in common should sufficiently protect both." *Restatement 2d Judg- ments*, § 59, p. 99–100 (1982).  Therefore

> for the purpose of affording opportunity for a day in court on issues contested in litigation ... there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct.... When the controlling owner is the party to the litigation, his opportunity and incentive to litigate issues commonly affecting him and the corporation is ordinarily sufficient to treat his participation as being on behalf of the corpo- ration as well.  *Id.*

*See Williams v. Messick*, 177 Md. 605, 614, 11 A.2d 472 (1940).

■  Here we have full awareness and active participation not only by stockholders of closely-held corporations but also by their directors and principal officers.  None of them objected to the non-joinder of the corporations;  neither corporation made any effort to intervene.  We hold that under these circumstances both corporations had their "day in court" and are bound by the decree entered by Judge Rollins.  Thus, the purposes of § 3–405(a) were gratified; all necessary parties were in effect before the court.

### Forfeiture of Voyageur's Stock in The Granary, Inc.

■  Bodnar next complains that when Judge Rollins ordered Voyageur's stock in The Granary, Inc. forfeited pursuant to the March 3 and October 17 agreements, he ordered an illegal forfeiture.  The specific error charged is that the chancellor "failed to address the issue of whether the forfeiture of stock by Voyageur to Brinsfield ... was liquidated damages or an [unlawful] penalty." *H.J. McGrath Co. v. Wisner*, 189 Md. 260, 55 A.2d 793 (1947).  It

is true that the chancellor did not address this question. That is because it was not raised below by pleadings, evidence, or argument. Under these circumstances the question is not before us. Md.Rule 1085.

*Dismissal of Bodnar's Suit Against Brinsfield et al.*

Bodnar's final grievance is based on the dismissal of her suit against Brinsfield, Godfrey and McAleer. In that action she sought, *inter alia,* that Brinsfield, Godfrey, and McAleer be enjoined from entering the Granary and from interfering with the conduct of the business of The Granary, Inc. She also sought a declaration that she was the sole owner of 450 shares of the stock of The Granary, Inc. And she raised issues about a possible sale of the business under a purported option from Brinsfield.

Most of the testimony in the consolidated case was received on the morning of the trial. As we have noted, Bodnar made an opening statement at the outset of the trial and she participated in the cross-examination of witnesses who testified about the problems between the parties, the two corporations, the agreements between the parties and the breach of those agreements. Much of that testimony related to Bodnar's suit as well as to Brinsfield's.

After a luncheon recess the court reconvened at the previously-fixed hour. Bodnar was not present although all the other parties were. No reason for Bodnar's absence was presented below or on appeal. In any case, no additional evidence was received to support Bodnar's suit; she did not testify. The chancellor dismissed it "having found no evidence to support the allegations contained in said petition." We see no error here. When a party appears and participates at trial but fails to present sufficient evidence in support of her claim, dismissal of that claim follows as a matter of course. *See Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 48, 382 A.2d 564 (1978). The real question is

whether the dismissal should have been with or without prejudice.

When a case has been heard on the merits a decree dismissing a bill of complaint without words of qualification is presumed to be a dismissal on the merits, and thus with prejudice. *Martin v. Evans,* 85 Md. 8, 36 A. 258 (1897). On the other hand, when a case has not in fact been heard on the merits, dismissal should ordinarily be without prejudice. *See Bailey v. Bailey,* 181 Md. 385, 30 A.2d 249 (1943). "A rule expressly authorizing discretionary dismissal with prejudice over objection of the plaintiff and before there has been a hearing on the merits or some default or proscribed conduct by the plaintiff would be open to serious constitutional challenge." *Byron Lasky & Assoc. v. Cameron-Brown Co.,* 33 Md.App. 231, 234, 364 A.2d 109 (1976).

We are not, of course, dealing here with what was before the court in *Byron Lasky* : a voluntary dismissal under former Md.Rule 582 (*compare* present Md.Rule 2–506). Bodnar never asked for leave to dismiss her petition. After participating in the consolidated proceedings, she simply failed to testify herself or to present additional evidence on her own behalf. While a plaintiff may have a right to obtain dismissal without prejudice before there has been a hearing on the merits, *Byron Lasky, supra,* it is otherwise when the proceedings have reached the point, as they had here, at which "the defendants [had] become entitled to affirmative relief." *Camden Sewer Co. v. Salisbury,* 157 Md. 175, 184, 145 A. 497 (1929). At that point, the court has at least discretion to dismiss with prejudice. We hold that the dismissal of Bodnar's suit was with prejudice and that Judge Rollins did not abuse his discretion in so dismissing it.

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.